MATTIE JOHNSON v. GEORGE McMILLAN AND ROBERT McMILLAN.

*Landlord and tenant—Negligence—Failure to keep premises in repair—Liability of owner.*

The owner of premises, who has leased them to a tenant without covenanting to keep them in repair, is not liable to a third person who is injured by reason of their non-repair while in the possession and under the control of the tenant, if the defect complained of did not exist at the time of the leasing. *Fisher v. Thirkell*, 21 Mich. 1.

Error to Wayne. (Speed, J.) Argued February 1, 1888. Decided March 2, 1888.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Charles W. Casgrain* (*Allan Howard Frazer*, of counsel), for appellant.

*F. A. Baker* (*James Caplis*, of counsel), for defendants.

CHAMPLIN, J. On the nineteenth of June, 1885, as the plaintiff was walking upon the sidewalk in front of No. 7 Fort street west, in the city of Detroit, she stepped on the cover of a coal-hole, which tilted, and projected her foot and limb through the coal-hole, and she was unable to extricate herself without assistance, which was rendered by a Mr. Edward W. Simpson, who saw her fall. She received injuries which incapacitated her from pursuing her daily avocation for several months.

The premises, No. 7 Fort street west, were owned by defendants. June 1, 1885, the defendants had rented the premises to Messrs. West & Cook, and they were in posses-

sion at the time of the accident. The terms of the lease were not proven, but it is not claimed that there was any covenant which bound defendants to keep the premises in repair. The tenants had, between the time of renting on June 1 and the nineteenth, at the time of the accident, ordered and caused to be delivered through the coal-hole in question a quantity of coal.

In order to fix any liability upon the defendants, the plaintiff, in her declaration, avers as follows

"And plaintiff avers that a short time prior to the receiving of said injuries said premises above described were leased by said defendants to Thomas J. West and Benjamin O. Cook, upon an oral lease, and, as plaintiff avers, at the time of the leasing and for a long time prior thereto, said scuttle-hole in said sidewalk abutting and adjoining said premises, and which forms a part of said premises, with the lid or covering and fastening, were out of repair and unsafe as above set forth, and in the improper and unsafe condition as above described, at the time of said leasing; and plaintiff avers said defendants did negligently, wrongfully, willfully, and knowingly lease said premises so out of repair and in the unsafe condition as herein alleged."

The scuttle and hole is thus described in plaintiff's declaration:

"Said scuttle-hole was an opening through said walk, about, to wit, 14 inches, or thereabouts, in diameter, leading into the vault below, in which opening was placed an iron thimble, or cylinder, to wit, one-eighth of an inch thick, about two feet in depth or more, with a flange or shoulder at the top, which extended out and rested on the sidewalk, into which said flange was sunk until it was even with the surface of the sidewalk. This opening was covered by an iron plate, to wit, 14 inches in diameter, which was let down into the top of the iron thimble about, to wit, one eighth of an inch, until said cover was even with the surface of said sidewalk. At the center of the inside of said iron cover was a ring, from which hung down a rope used to lock said cover."

The negligence of the defendants is thus set out:

"The defendants, on the day and year aforesaid, did will-

fully, negligently, wrongfully, and improperly furnish said scuttle-hole thimble, and the lid or covering of said scuttle-hole, which forms a part of said sidewalk and its fastenings, and did permit the same to become so badly, unsafely, and improperly out of repair in this, that the edge of said cover and thimble became so worn that said cover fitted so loosely that on said nineteenth day of June, and for a long time prior thereto, said cover would not stay in place, and would slip up when any one using said highway stepped on said cover; and that the rope used in fastening said cover became worn, and was not strong enough and sufficient to hold said cover tight to the thimble, and prevent it from working loose; and said scuttle thimble, or cylinder, cover and fastenings thereof, were inadequate and unsafe in this, that said cover plate did not sink sufficiently deep into said thimble, and did not fit tightly.''

When she came to make her case upon the trial, after showing how her injuries were received, and their extent, she introduced Mr. Edward W. Simpson, the person who assisted her at the time of the injury. He testified that he was one of the building inspectors of the city of Detroit. He described the accident and the coal-hole, its cover, and appliances for securing it.

He testified that he made an inspection of the premises in the preceding November, and found them in good repair, and safe; that on the occasion of the injury, after he had attended to the plaintiff, and secured a *coupé* which conveyed her home, he again went beneath the sidewalk and examined the fastening of the cover; that he found it secured and in a safe condition.

He also testified that the coal-hole, cover, and appliances for fastening were in good repair and proper for the purpose; that the cover was somewhat worn by use, but that did not render it unsafe or prevent it from being properly secured. There was a ring on the under side of the cover, to which a rope was attached. A horizontal bar passed through the lower end of the rope, and the cover was pulled down and held by twisting the rope. He testified that between the

time of the injury and the time he went down to examine the scuttle, immediately after, some one had gone down and secured it. Upon coming up he examined it and found it entirely safe.

One other witness was introduced to prove the defendants' negligence. This was Mr. Cook, one of the tenants at the time, whose deposition was read.

At the conclusion of the plaintiff's testimony the court took the case from the jury by directing a verdict for defendants, and for this the plaintiff assigns error.

Since the case of *Fisher v. Thirkell*, 21 Mich. 1, it has been settled law in this State that the owner of premises, who has leased them to a tenant without covenant by the owner to keep them in repair, is not liable to a third party who is injured by reason of the premises being out of repair while they are in the possession and control of the tenant, if the defect complained of did not exist at the time they were leased. In that case the authorities were reviewed and commented upon, especially those of the courts of the state of New York, which hold the owner nearly to the responsibility of an insurer of the safety of his premises, whether in his own possession or not.

The declaration in this case lays down the duty of defendants as owners of the premises in accordance with the decisions of New York, and then, at the conclusion, adds the clause above quoted relative to the condition of the premises when they were leased to Messrs. West & Cook.

The counsel for plaintiff claim that there was testimony in the deposition of Mr. Cook which, if believed, established the fact of defendants' negligence, and consequent liability in leasing premises to tenants which were out of repair and unsafe, by reason whereof plaintiff was injured; that if such testimony tended to prove this fact, the case should not have been taken from the jury, although the testimony of her other witness tended to show the premises in good repair when

leased; that the weight to be given to the whole testimony was for the jury, and they might have given more credit to the testimony of the witness Cook than to that of the witness Simpson.

This position is correct, if Cook's testimony conflicts with that of Simpson, and tends to prove what counsel claim it does. This leads us to an examination of Cook's testimony. It can be considered only so far as it supports the issue made by the pleadings.

The declaration avers that the appliance for fastening the top of the scuttle was a rope, tied in the ring of the cover, which hung down inside. It does not aver how the cover was locked or fastened with this rope, but it does aver that—

"An iron rod, or some other firm material, should have been supplied by the defendants for that purpose."

The defects alleged in the declaration to have existed at the time the premises were rented were as follows: The edge of the cover and thimble became so worn that the thimble fitted so loosely that the cover would not stay in place, but would slip up when any one, in using the highway, would step thereon. The rope used in fastening said cover became worn, and was not strong enough to hold the cover tight in the thimble and prevent it from working loose. The cover plate did not sink sufficiently deep into said thimble, and did not fit tightly.

These averments are not supported by the testimony of Cook. From his testimony the cover was not held in place by a rope, as averred in the declaration, which, having become worn and weak, was insufficient to hold the cover in place; but it was held by a rod or chain, which the declaration averred was not, but should have been, used. And this particular appliance not averred to have been used is the one which his testimony shows must be adjusted with care to prevent the cover from slipping or tilting up. His testimony as to the appliances furnished by defendants does not support

the allegations in the declaration, and consequently does not tend to prove the case alleged against defendants.

It is apparent, moreover, that this witness was seeking by his testimony to shift the responsibility for his own carelessness from himself and co-tenant to defendants. He says he unfastened the cover to the scuttle to receive the coal. Here it appears that the appliances furnished and used had proved adequate and safe for years, and were still so, at least from the fall preceding, until unfastened by the witness. When the coal had been put in, he says he again fastened it as it was before. He does not say that the appliances were such that it could not be securely fastened. His testimony shows that by exercising care the cover could be fastened so as to be secure; and that a—

"Deviation from the fastening point would leave the cover loose and insecure, and easily tilted."

The inference is irresistible that whoever attempted to secure the cover after the coal was delivered was careless and negligent in not making it secure and safe, and that the fault was not in the appliance, but with the manner of using it. The same scuttle and appliances for fastening, it appears from his testimony, remained in use after the accident so long as he occupied the premises, which was about 20 days, and, for anything that appears, was as safe and secure as it had always been prior to the accident.

Testing his testimony by the proper standard, namely, the allegations of the declaration, we do not think it can be said that it tended to prove that the fault was in the premises or appliances furnished by defendants at the time they rented to Messrs. West & Cook.

The judgment must be affirmed.

The other Justices concurred.