[No. 347.    Decided February 17, 1892.]

PETER JOHNSON, *Respondent*, v. THE TACOMA CEDAR LUMBER COMPANY, *Appellant*.

MASTER AND SERVANT—DEFECTIVE MACHINERY—LIABILITY OF LESSOR—APPEAL—EXCEPTIONS NOT TAKEN AT TRIAL.

Although an instruction may be erroneous, the error cannot be urged on appeal unless an exception was taken at the trial.

In an action for damages for injuries caused by the defective condition of machinery about which plaintiff was employed, in defendant's mill, and one of the issues in the cause is as to whether defendant or another was the operator of said mill, and the proof showed that the defendant had leased the mill to another prior to the injury, it is error for the court to refuse to charge the jury that defendant "must prove by a preponderance of the evidence that at the time of the injury the defendant corporation was then hirer or employer of the plaintiff; and that there then existed between them the relation of master and servant."

*Appeal from Superior Court, Pierce County.*

The facts in this case are stated in the opinion.

*Doolittle, Pritchard, Stevens & Grosscup,* and *W. H. Effinger,* for appellant.

*E. W. Tuylor* (*W. H. Harris,* of counsel), for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This was an action for damages, brought by the respondent against the Tacoma Cedar Lumber Company for the loss of his arm, caused by defective machinery in appellant's shingle mill.    Respondent, while attempting to put some rosin on a belt, had his arm caught, as he alleges, by some loose lacing on the belt, which resulted in the injury complained of.    The complaint alleges that at the time of the injury the defendant was the owner, proprietor and operator of the mill in which the accident occurred, and that the mill was occupied, used and operated by the defendant for the manufacture of lumber, shingles, etc., and that defendant, being such owner, proprietor and operator, hired and employed the plaintiff as an employé and servant to work in and around said mill for hire to be paid by defendant.    It is not necessary for the purposes of this opinion to notice the other allegations of the complaint.    The defendant in its answer, among other things, denies that at the time of the injury it was the operator of said mill, or that it hired or employed the plaintiff as an employé or servant to work in, around or about said mill, or that it had agreed to pay him for such work;  but alleges that prior to the time at which the plaintiff entered into his services at said mill, the defendant leased the mill to one Barnes on certain terms and conditions mentioned in the answer;  that under said lease Barnes took possession and exclusive control of the mill and machinery, and in his own name and on his own account used and operated the same;  and that the plaintiff was hired and employed by the said Barnes, and not in any wise by the defendant.    Thus

the question, who was the operator of the mill, was put squarely in issue by the pleadings, and was one of the contested questions in the trial of the cause. The jury returned a verdict in favor of the plaintiff for four thousand dollars.

Number three of the instructions was as follows:

"If you believe from the evidence that the defendant was the owner of said mill and machinery, and that at the time defendant claims to have leased the property to said Barnes there existed defects in said machinery that caused the injury complained of, and that such machinery was defectively constructed, and that such defective construction and existing defects, if any, were known to defendant at the time, and that the defendant carelessly and negligently allowed such defects, if any, to remain, and did not remedy the same, and that if such defects, if any, had not so existed, that the injury complained of would not have happened, then defendant cannot release itself by reason of any subsequent lease to Barnes."

This instruction was alleged as error by the appellant, and undoubtedly is an erroneous statement of the law. But it is claimed by the respondent, and seems to be a fact as shown by the record, that no exception was taken to this particular instruction, and hence the error cannot be urged here for the first time. However, the converse of the proposition of law stated in instruction number 3, as given by the court, is embodied in defendant's request number three, which is as follows:

"If you believe from the evidence that the injury to plaintiff was caused by the defective condition of the machinery, and without contributive negligence on his part, yet, before the plaintiff can have a recovery against this defendant, he must prove by a preponderance of the evidence that at the time of the injury the defendant corporation was then hirer or employer of the plaintiff, and that there then existed between them the relation of master and servant."

This instruction the court refused to give to the jury;

the refusal was duly excepted to, and is assigned as error here, and must be considered. This instruction we think fairly stated the law of the case. It was one of the material issues involved. The complaint is based on the relationship of master and servant. The allegations of the complaint, that the defendant was the operator of the mill at the time of the accident and that it hired and employed the plaintiff, were not meaningless allegations, but they were material and essentially necessary to sustain a judgment in this kind of an action. If the complaint had alleged that the defendant was the owner of this mill and that at the time the injury was inflicted it was operated and controlled by Barnes under a lease, and that plaintiff was employed by Barnes and was working for Barnes, it would not in our judgment have stated a cause of action against the defendant. The fact that these allegations are in the answer, instead of the complaint, will not change their effect on the case if they are sustained by the proof.

We hardly think it is worth while to enter into a discussion of the relative liabilities of landlords and tenants so far as the rights of third parties are concerned. At the common law the occupier and not the landlord was bound to keep the premises in repair and was *prima facie* liable to third persons for damages arising from any defect. There are some cases which hold that where there is an express agreement between the landlord and the tenant, "that the landlord shall keep his premises in repair," so that in case of recovery against the tenant the latter would have his remedy over against the landlord, to avoid circuity of action the party injured by the defect may have his action in the first instance against the landlord. For this class of cases see 1 Thompson on Negligence, p. 317, and notes. But this class of cases is not in point here. It is not alleged or contended that there was any agreement of the landlord to keep the premises or the machinery in repair, nor

that there was any hidden defect in the machinery not made known by the landlord, which would bring it within the rule laid down in that class of cases; nor that the public had any right to go on these premises; or even that the machinery was out of order or repair at the time the lease was executed. In this case, according to the allegations in the answer, the plaintiff was there at the instance and request of the lessee, and says Shearman & Redfield on Negligence, § 711:

"The liability of the landlord, however, exists only in favor of persons who stand strictly upon their rights as strangers. Those who claim upon the ground that they were invited into a dangerous place must seek their remedy against the person who invited them. If they are the guests of the tenant, he, and not the landlord, is the person from whom they must seek redress for injuries caused by any defects in the premises."

This statement of the law by Shearman & Redfield is quoted in many cases where this question is raised, and can be conceded to state the general concensus of judicial opinion. It would be as unreasonable as it is unjust to hold the owner of manufacturing establishments responsible for all damages that might occur by reason of the machinery not being kept in proper repair by his lessee, when he by the very operations and conditions of the written lease could have no supervision over it. If such a responsibility would attach during a short lease it would also attach during a long lease, and as no prudent man could afford to run such risks, the practical result would be to deprive the owner of the right to lease his premises. It is argued by the respondent that this right is liable to abuse, and that sham leases would be entered into for the purpose of avoiding responsibility in cases of this kind. It may be, and doubtless is true, that sham leases are sometimes pleaded for that purpose; but that cannot affect the principle, and the *bona fides* of the lease transaction is a fact to be proven like any other

fact in the case. That was one of the things to be proven in this case. If the proof of the lease failed and the plaintiff had otherwise made out his case, he could have recovered; but if the lease was proven to the satisfaction of the jury he could not recover. The jury could have understood this, and would have understood it, had defendant's request number three been given. At all events it would have had a tendency to neutralize the effect of instruction number three given by the court. There was testimony tending to establish the lease as claimed by the defendant. This court cannot say that the jury would not have found for the defendant upon that proposition, and that the verdict would not have been for the defendant had they been properly instructed upon that point. For that reason we must conclude that the refusal of the court to instruct as requested was prejudicial error, for which the judgment must be reversed. As a new trial will probably develop new testimony, we will not pass upon the other questions raised.

The judgment is reversed.

ANDERS, C. J., and HOYT and SCOTT, JJ., concur.

STILES, J., not sitting, being disqualified.